UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| DOUGLAS PERRY,<br>Individually and on behalf<br>of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>STOKES & SPIEHLER, INC.,<br><br>*Defendant.* | Civil Action No. _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION<br>PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Douglas Perry ("Plaintiff" or "Perry") brings this action individually and on behalf of all similarly situated individuals (hereinafter "Plaintiff and the Putative Class Members" or "Plaintiff and the FLSA Collective Members") who worked for Stokes & Spiehler, Inc. ("Stokes & Spiehler" or "SSI"), and were paid a day rate but no overtime from three years preceding the filing of the Original Complaint through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

### I.
### OVERVIEW

1. This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq.*, to recover overtime wages.

2. Plaintiff and the Putative Class Members are those similarly situated persons who worked for SSI, anywhere in the United States, at any time from April 27, 2018 through the final

disposition of this matter, and were paid a day rate but did not receive overtime for all hours worked over forty (40) in each workweek.

3. SSI improperly classified Plaintiff and the Putative Class Members as independent contractors.

4. Although Plaintiff and the Putative Class Members routinely work (and worked) in excess of 40 hours per workweek, Plaintiff and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

5. The decision by SSI not to pay overtime compensation to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

6. SSI knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

7. Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

8. Plaintiff and the Putative Class Members therefore seek to recover all unpaid overtime and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

9. Plaintiff prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

## II.
## THE PARTIES

10. Plaintiff Perry worked for SSI within the relevant time period. Plaintiff Perry did not receive overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

11. The Putative Class Members include those current and former oilfield workers who worked for SSI, anywhere in the United States, at any time from April 27, 2018 through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Perry worked and was paid.

12. Stokes & Spiehler, Inc. ("Stokes & Spiehler" or "SSI") is a Louisiana for-profit corporation, and may be served through its registered agent for service of process: **Beyt & Beyt, PLC, 700 E. University Avenue, Lafayette, Louisiana 70503.**

## III.
## JURISDICTION & VENUE

13. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

14. This Court has personal jurisdiction over SSI because the cause of action arose within this District as a result of SSI's conduct within this District.

15. Venue is proper in the Western District of Louisiana because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

16. Specifically, SSI is headquartered in Lafayette, Lafayette Parish, Louisiana, which is located in this District and Division.

17. Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391.

---

[1] The written consent of Douglas Perry is attached hereto as Exhibit "A."

## IV.
## ADDITIONAL FACTS

18. SSI specializes in drilling, completion, workover, concentric, and production operations, and has a long history of working with both large and small operators in many of the major oil and gas producing regions throughout the United States.[2]

19. Specifically, SSI provides the following services: project management, drilling engineering, rig operations, through tubing intervention, construction and production.[3]

20. To provide these services, SSI employed numerous oilfield workers—including the individuals that make up the putative or potential class.

21. While exact job titles may differ, these employees were subjected to the same or similar illegal pay practices for similar work in the oilfield and offshore in the Gulf of Mexico.

22. Plaintiff Perry has worked for SSI as a Rig Clerk since approximately March 2016.

23. SSI paid Plaintiff and the Putative Class Members a flat amount for each day worked, regardless of the number of hours worked each day.

24. Specifically, Plaintiff Perry received $650.00 for each day worked[4] but did not receive overtime compensation at the required rate of time-and-one-half for all hours worked over forty (40) each workweek.

25. Although it is well-known that blue-collar oilfield workers like Plaintiff and the Putative Class Members are ***not exempt*** from overtime, SSI did not pay Plaintiff and the Putative Class Members the additional overtime premium required by the FLSA for hours worked in excess of forty (40) in a workweek.

---

[2] http://www.stokesandspiehler.com/index.html.

[3] http://www.stokesandspiehler.com/services/index.html.

[4] Plaintiff and the Putative Class Members are paid a true day rate – that is, they do not get paid if they do not work.

26. Plaintiff and the Putative Class Members' primary job duties included performing daily checklists, assisting with the preparation of equipment, and performing other oilfield related functions on various job sites.

27. Plaintiff and the Putative Class Members would conduct their day-to-day activities within mandatory and designed parameters and in accordance with pre-determined operational plans created by SSI and/or its clients.

28. Plaintiff and the Putative Class Members' daily and weekly activities were routine and largely governed by standardized plans, procedures, and checklists created by SSI and/or its clients.

29. Virtually every job function was pre-determined by SSI and/or its clients, including the tools to use at a job site, the schedule of work, and related work duties.

30. Plaintiff and the Putative Class Members were prohibited from varying their job duties outside of the predetermined parameters.

31. Moreover, Plaintiff and the Putative Class Members' job functions were primarily routine and manual labor in nature, requiring little to no official training, much less a college education or other advanced degree.

32. Indeed, Plaintiff and the Putative Class Members are blue-collar workers.

33. They rely on their hands, physical skills, and energy to perform manual and routine labor in the oilfield.

34. Plaintiff and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

35. Plaintiff and the Putative Class Members did not (and currently do not) have the authority to hire or fire other employees, and they were not (and currently are not) responsible for making hiring or firing recommendations.

36. Moreover, Plaintiff and the Putative Class Members did not (and currently do not) supervise two or more employees.

37. Plaintiff and the Putative Class Members' duties did not (and currently do not) concern work directly related to the management or general business operations of SSI or its customers.

38. SSI determined the days (and number of hours) Plaintiff and the Putative Class Members worked.

39. SSI set Plaintiff and the Putative Class Members' pay and controlled the number of days they worked.

40. SSI set all employment-related policies applicable to Plaintiff and the Putative Class Members.

41. SSI maintained control over pricing and marketing.

42. SSI also chose equipment and product suppliers.

43. SSI owned or controlled the equipment and supplies that Plaintiff and the Putative Class Members used to perform their work.

44. SSI had the power to hire and fire Plaintiff and the Putative Class Members.

45. SSI made all personnel and payroll decisions with respect to Plaintiff and the Putative Class Members, including but not limited to, the decision to pay Plaintiff and the Putative Class Members a day rate with no overtime pay.

46. Plaintiff and the Putative Class Members did not employ their own workers.

47. Plaintiff and the Putative Class Members worked continuously for SSI on a permanent full-time basis.

48. SSI, instead of Plaintiff and the Putative Class Members, made the large capital investments in vehicles, buildings, equipment, tools, and supplies.

49. Moreover, SSI paid operating expenses like rent, payroll, marketing, insurance, and bills.

50. Plaintiff and the Putative Class Members relied on SSI for their work.

51. Plaintiff and the Putative Class Members did not market any business or services of their own.

52. Plaintiff and the Putative Class Members worked the hours assigned by SSI.

53. Plaintiff and the Putative Class Members performed duties assigned by SSI.

54. Plaintiff and the Putative Class Members worked on projects assigned by SSI.

55. Plaintiff and the Putative Class Members worked for the benefit of SSI and its customers.

56. Plaintiff and the Putative Class Members did not earn a profit based on any business investment of their own.

57. Rather, Plaintiff and the Putative Class Members' only earning opportunity was based on the number of days they were allowed to work, which was controlled by SSI and/or its customers.

58. SSI improperly classified Plaintiff and the Putative Class Members as independent contractors.

59. The classification was improper because Plaintiff and the Putative Class Members were not in business for themselves.

60. Instead, they were economically dependent upon SSI and/or its customers for their work.

61. Plaintiff and the Putative Class Members' duties did not (and currently do not) include managerial responsibilities or the exercise of independent discretion or judgment.

62. The FLSA mandates that overtime be paid at one and one-half times an employee's regular rate of pay.

63. SSI denied Plaintiff and the Putative Class Members overtime pay as a result of a widely applicable, illegal pay practice.

64. Plaintiff and the Putative Class Members regularly worked in excess of forty (40) hours per week but never received overtime compensation.

65. SSI applied this pay practice despite clear and controlling law that states that the duties which were performed by Plaintiff and the Putative Class Members consisted of ***non-exempt*** work.

66. Accordingly, SSI's pay policies and practices blatantly violated (and continue to violate) the FLSA.

## V.
## CAUSES OF ACTION

### A. FLSA COVERAGE

67. All previous paragraphs are incorporated as though fully set forth herein.

68. The FLSA Collective is defined as:

**ALL OILFIELD WORKERS WHO WORKED FOR STOKES & SPIEHLER, INC., ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM APRIL 27, 2018 THROUGH THE FINAL DISPOSITION OF THIS CASE, AND WERE PAID A DAY RATE BUT DID NOT RECEIVE OVERTIME FOR HOURS WORKED OVER FORTY IN ANY WORKWEEK ("FLSA Collective" or "FLSA Collective Members").**

69. At all times hereinafter mentioned, SSI has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

70. At all times hereinafter mentioned, SSI has been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

71. At all times hereinafter mentioned, SSI has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials

that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

72. During the respective periods of Plaintiff and the FLSA Collective Members' employment by SSI, these individuals provided services for SSI that involved interstate commerce for purposes of the FLSA.

73. In performing the operations described hereinabove, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

74. Specifically, Plaintiff and the FLSA Collective Members are (or were) ***non-exempt*** employees who worked for SSI and were engaged in oilfield services that were directly essential to the production of goods for SSI and related oil and gas companies. 29 U.S.C. § 203(j).

75. At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

76. In violating the FLSA, SSI acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

77. The proposed collective of similarly situated employees, i.e. putative FLSA Collective Members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 68.

78. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of SSI.

### B.   FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA

79. All previous paragraphs are incorporated as though fully set forth herein.

80. SSI violated provisions of Sections 7 and 15 of the FLSA, 29 U.S.C. §§ 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for hours worked in excess of forty (40) per workweek at rates at least one and one-half times the regular rates.

81. Plaintiff and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of SSI's acts or omissions as described herein.

82. SSI is in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

83. Moreover, SSI knowingly, willfully and in reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees overtime compensation. 29 U.S.C. § 255(a).

84. SSI knew or should have known its pay practices were in violation of the FLSA.

85. SSI is a sophisticated party and employer, and therefore knew (or should have known) its policies were in violation of the FLSA.

86. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted SSI to pay overtime in accordance with the law.

87. The decision and practice by SSI to not pay overtime was neither reasonable nor in good faith.

88. Accordingly, Plaintiff and the Putative Class Members are entitled to overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

C. **FLSA COLLECTIVE ACTION ALLEGATIONS**

89. All previous paragraphs are incorporated as though fully set forth herein.

90. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff.

91. Other similarly situated employees have been victimized by Stokes & Spiehler's patterns, practices, and policies, which are in willful violation of the FLSA.

92. The FLSA Collective Members are defined in Paragraph 68.

93. SSI's failure to pay any overtime compensation results from generally applicable policies and practices, and does not depend on the personal circumstances of the individual FLSA Collective Members.

94. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

95. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

96. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated for all hours worked in excess of forty (40) hours per workweek.

97. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

98. Indeed, the FLSA Collective Members are blue-collar oilfield workers entitled to overtime after forty (40) hours in a week.

99. SSI employed a substantial number of similarly situated oilfield workers since April 27, 2018.

100. Upon information and belief, these workers are geographically dispersed, residing and working in locations across the United States.

101. Because these workers do not have fixed work locations, they may work in different states across the country in the course of a given year.

102. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and SSI will retain the proceeds of its violations.

103. Moreover, individual litigation would be unduly burdensome to the judicial system.

104. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

105. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 68 and notice should be promptly sent.

## VI.
## RELIEF SOUGHT

106. Plaintiff respectfully prays for judgment against SSI as follows:

    a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 68 and requiring SSI to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

    b. For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

    c. For an Order awarding Plaintiff (and those FLSA Collective Members who have joined in the suit) back wages that have been improperly withheld;

    d. For an Order pursuant to Section 16(b) of the FLSA finding SSI liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit),

for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for attorneys' fees and costs;

      e.      For an Order awarding the costs and expenses of this action;

      f.      For an Order awarding attorneys' fees;

      g.      For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

      h.      For an Order awarding Plaintiff a service award as permitted by law;

      i.      For an Order compelling the accounting of the books and records of SSI, at SSI's own expense; and

      j.      For an Order granting such other and further relief as may be necessary and appropriate.

Date: April 27, 2021

Respectfully submitted,

**LAW OFFICES OF JOSEPH A. GAAR, JR.**

By: /s/ *Lucas S. Colligan*
**Lucas S. Colligan (No. 31673)**
lucas@gaarlaw.com
114 Representative Row
Lafayette, Louisiana 70508
Telephone: (337) 233-3185
Facsimile: (337) 233-0690

*Local Counsel*

**ANDERSON ALEXANDER, PLLC**

/s/ *Clif Alexander*
**Clif Alexander** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24064805
clif@a2xlaw.com
**Lauren E. Braddy** *(Pro Hac Vice Anticipated)*
Texas Bar No. 24071993
lauren@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

***Attorneys in Charge for Plaintiff and Putative Class Members***